# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

**THOMAS MCFADDEN,**

*Plaintiff*

v.

**FEDERAL EXPRESS CORPORATION,**

*Defendant*

Case No. 2:18-05634-JDW

## MEMORANDUM

Thomas McFadden was a Federal Express courier who initiated an altercation with a customer. As a result, FedEx terminated his employment. He now claims that justification was a pretext and that FedEx discriminated against him on the basis of his age and disability. But McFadden has not shown that he is disabled, and FedEx had a legitimate reason to let him go. FedEx is therefore entitled to summary judgment.

## I. FACTS

### A. FedEx's Employment Policies

FedEx has a People Manual that contains its employment policies. Among other things, the People Manual has a Performance Improvement policy and an Acceptable Conduct policy. The Acceptable Conduct policy prohibits employees from engaging in inappropriate conduct towards customers. This includes "using threatening, intimidating, coersi[ve], or abusive language; engaging in violent, threatening, intimidating, coerci[ve], or abusive behavior; or displaying blatant or public disrespect toward or about any employee, customer, vendor or member of the public while on duty." (ECF No. 42-4, Ex. J., p. 95.) The policy also prohibits "[u]nprofessional or rude conduct toward any

customer while on duty." (*Id.*) Violations of the Performance Improvement or Acceptable Conduct policies can result in disciplinary actions, such as deficiency notifications. These include "warning letters" for inappropriate conduct and "performance reminders" for performance deficiencies. Additionally, "**any** violation of the Acceptable Conduct policy could potentially result in termination." (*Id.* at 96.) (emphasis added.)

The Acceptable Conduct policy also addresses recurrent patterns of misconduct, meaning two or more occurrences of the same or similar conduct within five years. For instance, "[i]ssuance of a Warning Letter for a deficiency which has been addressed previously through [the Acceptable Conduct policy] can result in more severe action up through termination." (*Id.* at 97.) Additionally, "[t]he receipt of three notifications of deficiency within a 12-month period normally results in termination." (*Id.* at 97.) However, "progressive discipline is not required and issuance of a Warning Letter is not a prerequisite for termination." (*Id.*)

The Acceptable Conduct policy also details the Online Compliment and Counseling ("OLCC") system, which FedEx management uses to record discussions with employees regarding their performance and conduct. OLCCs are not disciplinary, but FedEx can consider them when determining whether to impose discipline, including termination, in a particular circumstance. FedEx can also consider OLCCs when reviewing an employee's work history to identify patterns of conduct, performances issues, or recurrent problems.

    **B.**    **McFadden's FedEx Employment**

FedEx employed McFadden as a courier from March 2005 through June 2018, when FedEx terminated his employment. At the time of his termination, McFadden was 55 years old. He was employed at FedEx's SEGA station, located in Fort Washington, Pennsylvania. As a courier, McFadden's job functions included, among other things, the safe operation of vehicles and the

2

ability to lift 75 pounds without assistance. At the time of McFadden's termination, Dave Mullican was the senior manager of SEGA station and oversaw five operations managers.

1.  **Pre-medical leave disciplinary history**

From 2006 to 2017, McFadden received various discipline and counseling from FedEx. He received performance reminders in 2006, 2010, and 2017. In 2014, he received a warning letter for using offensive language and being disrespectful to a fellow employee. In 2015, he received three warning letters, including one for refusing to pick up packages and one for engaging in an altercation with another driver in violation of the Acceptable Conduct policy. In 2017, McGorry issued him a warning letter for insubordination. McFadden also received four OLCC's between 2006 and 2014 for responding inappropriately to dispatch, arguing with another employee, and other violations of the Acceptable Conduct policy.

2.  **Medical leave**

McFadden suffers from hypertrophic obstructive cardiomyopathy, a permanent genetic heart condition that can cause fatigue and shortness of breath. On June 23, 2017, McFadden informed FedEx that his heart condition required an accommodation. At the time, Carmella Simmons was McFadden's route supervisor, but Joanne McGorry replaced Simmons in that capacity soon thereafter. In September 2017, McFadden told McGorry that he needed to take FMLA leave for an upcoming heart procedure. FedEx granted his FMLA leave, and on November 7, 2017, McFadden had a successful procedure.

On January 22, 2018, McFadden's physician, Dr. Borgatta, released him to return to work full time with no restrictions. Dr. Borgatta testified that, as of that date, McFadden's condition was stable and symptom free, with no side effects from any medications. Dr. Borgotta also testified that McFadden's heart condition did not prevent him from performing the physical tasks required of a courier. Nevertheless, as a qualified Department of Transportation courier, McFadden needed an

3

additional medical review before he could be released to work. Accordingly, FedEx granted McFadden an additional 90-day extension of his leave in order to complete the medical review. On February 13, 2018, Sherri Gazalla, a third-party Medical Review Officer, informed FedEx that McFadden could return to work full time effective February 14, 2018.

### 3. The Keenan Motors incident

Following McFadden's return from medical leave, McGorry issued McFadden nine OLCCs related to his performance. FedEx reassigned him to Route 662, which services the Doylestown area, including Keenan Motors, an auto body shop. Christina Patitucci is the FedEx sales executive assigned to work with Keenan Motors. On June 13, 2018, McFadden had a dispute with Scott Shead, Keenan Motors' receiver. When McFadden returned to the station, he notified Michael Schmickle, a FedEx operations manager, that Schmickle might get a complaint from Keenan Motors. McFadden told Schmickle that one of the Keenan Motors' employees accused McFadden of raising his voice. That same day, Brandon Foss of Keenan Motors emailed Patitucci. In the email, Foss explained that Keenan Motors' "shipping and receiving clerk just had a rather heated argument with a driver" because the clerk wanted to verify that he had received all of the packages he was signing for. (ECF No. 42-5, Ex. CC.) The Parties have different versions of what happened next.

FexEx says that Patitucci went to Keenan Motors that afternoon and met with Foss, Shead, Mark Sherk, and Andy Blatnick to find out what happened. McFadden says that meeting never happened. The parties do agree that on June 14, 2018, Patitucci emailed Mullican and McGorry about the incident: "Tom allegedly screamed in [the] customer's face, tried forcing him to sign for his packages before the customer was able to count or inspect them and then . . . got physical with [the] customer by throwing his hip into him." (ECF No. 42-5, Ex. Y.) Patitucci also attached a PDF, which

4

showed that McFadden had changed the names of the Keenan Motors employees who sign for the packages to two expletives.

On June 15, 2018, Mark Sherk emailed McGorry describing the delivery altercation that he had observed two days prior. In the email, Sherk described "[major yelling by FedEx Driver [who] never wants anyone to check out how many packages we get." (*Id.*, Ex. S.) Sherk also related how McFadden "[u]sed his [h]ip to push past Scott." (*Id.*) That same day, Mullican met with McFadden and suspended him pending an investigation. He also asked McFadden to complete a written statement explaining the incident, which McFadden completed and signed. FedEx also claims that Mullican and Patitucci visited Keenan Motors on June 15 to meet with Foss, Shead, and Sherk. McFadden, however, claims that Mullican never met with Shead or Sherk.

To assist Mullican with the investigation, McGorry compiled an account of McFadden's employment history. She also discussed McFadden's conduct with Mullican. Mullican terminated McFadden's employment on June 21, 2018, as a result of McFadden's verbal and physical confrontation with the Keenan Motors customers. Mullican made his decision based on McFadden's history of customer complaints, behavior related deficiencies, and recurrent pattern of misconduct. Following his termination, McFadden was permanently replaced on Route 662 by Sekou Favors, who is 45 years old.

    **C.**    **Procedural History**

On December 31, 2018, McFadden filed the instant lawsuit against FedEx for violations of the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, and the Pennsylvania Human Relations Act. After discovery, FedEx moved for summary judgment on each of McFadden's claims. The Motion is now ripe for disposition.

5

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. FedEx's Reason For Terminating McFadden

FedEx terminated McFadden because of the incident at Keenan Motors. That fact is beyond dispute, even after considering the evidence in the light most favorable to McFadden. When FedEx terminated McFadden, it knew that he (a) was involved in an incident at Keenan Motors, during which he yelled at a customer, may have become physical, and changed the customers' names to expletives on his handheld scanner and (b) had a history of discipline, including for insubordination, arguing, and getting into an altercation. McFadden does not dispute that he was involved in an altercation at Keenan Motors. He also does not dispute that he had received various discipline both before and after his medical leave. Those facts justify FedEx's termination decision.

6

*See Kier v. F. Lackland & Sons LLC*, 72 F. Supp.3d 597, 618-19 (E.D. Pa. 2014) (harsh customer review justified termination decision).

Even though he doesn't dispute these facts, McFadden argues that they were not the real reason FedEx terminated him. He has no direct evidence to support that theory. Instead, he points to various circumstantial evidence to suggest that FedEx is making it up. To support that argument, McFadden must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [FedEx's] proffered legitimate reasons for its action that a reasonable factfinder *could* find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (cleaned up); *see also Fasold v. Justice*, 409 F.3d 178, 185 (3d Cir. 2005).

McFadden has not made such a showing here. He points to various disputes about how, exactly, FedEx investigated the complaint against him. For example, Patitucci says that she went to Keenan Motors on June 13, but Shead says he did not talk to her that day. Patitucci and Mullican say they went to Keenan Motors on June 15 and spoke with Foss, Shead, and Sherk, but McFadden disputes who participated in that meeting. Although these disputes might be genuine, they are not material. There is no dispute that McFadden had a dispute with Sherk—FedEx's customer. There is also no dispute that the altercation turned physical when McFadden "[u]sed his [h]ip to push past . . . ." (ECF No. 42-5, Ex. S.) Nor is there a dispute that Keenan Motors complained about McFadden, including in Foss's email on June 14. Finally, there is not debate that FedEx investigated, even if the details of that investigation are in question.

McFadden claims that the disparities about FedEx's investigation show that FedEx "fabricated material parts of its investigation." (ECF No. 42-1 at 4.) They do not. They reveal variations in witnesses' memories. However, those inconsistencies don't support a leap to the conclusion that FedEx fabricated anything. Because there is no actual evidence of a fabrication here, McFadden's

7

citation on *Webb v. Merck & Co.*, 450 F. Supp.2d 582 (E.D. Pa. 2006) misses the mark. In *Webb*, the supervisor fabricated a production error by plaintiff in order to arrange for plaintiff's suspension. McFadden has no such evidence.

McFadden also argues that McGorry's involvement in the investigation and the decision to fire him undermines FedEx's explanation. According to McFadden, McGorry has a history of discriminating against FedEx employees. McFadden cites only one internal EEO complaint against McGorry for harassment from 2015. FedEx's investigation determined that complaint to be without cause. A single, unsubstantiated complaint from three years earlier, without more, is not enough for the Court to infer that she discriminated here. In any event, McGorry was not the decision maker with respect to McFadden's termination, and her involvement in his investigation and termination was limited. Ultimately, Mullican made his own decision, based on McFadden's poor employment history, including OLCC's from McGorry and discipline from other supervisors, and the Keenan Motors complaint, to terminate McFadden's employment.

### B. McFadden's Discrimination Claims

#### 1. ADEA

The ADEA states that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). ADEA claims are subject to the *McDonnell Douglas* burden-shifting framework. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). The parties do not dispute the first two steps of that analysis, and the Court will not devote time to them. Instead, it will focus on the third element: whether McFadden can show that FedEx's reason for firing him was a pretext.

To make such a showing, he would ultimately have to discredit FedEx's proffered reasons or adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a

motivating or determining cause of the adverse employment action. *See Fasold*, 409 F.3d at 185. The Court has already determined that McFadden does not have evidence to discredit FedEx's proffered reason. He also lacks evidence that discrimination was a motivating factor. McFadden claims that FedEx treated younger employees, including Corey Richards and Todd Roxbury, better than him. While he has shown some differences in treatment, he has not shown that either of them had the disciplinary history or that either of them had a physical altercation with a customer. They are therefore not similarly situated. Because he has no other evidence to dispute FedEx's reason, he cannot prevail on his age discrimination claims.

### 2. Disability discrimination

The ADA bars an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Like ADEA claims, ADA claims are subject to the *McDonnell Douglas* framework. To establish a *prima facie* case of discrimination under the ADA or PHRA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). A person is disabled if "he (a) has a physical or mental impairment that substantially limits one of the major life activities of such individual; (b) has a record of such an impairment; or (c) is regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. *Id.* § 12102(2)(A); *see also Wilson v. Iron Tiger Logistics, Inc.*, 628 F. App'x 832, 835 (3d Cir. 2015).

McFadden has not shown that he was disabled. He offers no evidence to show that his hypertrophic obstructive cardiomyopathy limits any of his major life activities. Although one doctor

testified that hypertrophic cardiomyopathy **can** cause fatigue, shortness of breath, and limit an individual's ability to work, nothing suggests that McFadden suffered from those symptoms. To the contrary, the doctor noted that after McFadden's release from surgery on January 19, 2018, Mc Fadden was "stable and symptom free", with no side effects from any medications. (ECF No. 42-5, Ex. O at 34:23-35:18, 58:20-59:1.) One month later, on February 6, McFadden told the rehabilitation department that he had no symptoms. Indeed, McFadden's post-surgery stress test was negative. McFadden's physician released him to full duty with no restrictions, as did FedEx's third-party Medical Review Officer.

McFadden's alternative theory, that FedEx regarded him as disabled, also lacks factual support. McFadden's doctor and FedEx's Medical Review Officer cleared McFadden, without restrictions. At that point, there was no reason for anyone at FedEx to think McFadden was disabled. And he has no evidence that anyone did, in fact, think he was disabled. McGorry acknowledged that he had been on short-term disability leave, but she did not say anything to suggest she thought he still had a disability.

In any event, even if McFadden could make a *prima facie* showing of disability discrimination, his claim would falter when he had to prove that FedEx's reasons for terminating him were pretext. Indeed, unlike his ADEA claim, he has no evidence of pretext other than his assertion that FedEx fabricated things. Because the Court has rejected that argument, he has nothing. He therefore cannot prevail on his disability discrimination claims.

### 3. Retaliation

"To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Gera v. Cty. of Schuylkill*, 617 F. App'x 144, 147 (3d Cir.

2015) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). For his FMLA claim, McFadden must establish that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of FMLA rights. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quotations omitted).

With respect to the third element of these retaliation claims, the causation prong, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). Absent such proof, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). That evidence may include "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). After a plaintiff establishes a *prima facie* case, the standard burden-shifting framework under *McDonnell Douglas* applies. *Id.* at 193. FedEx challenges the causation element of McFadden's retaliation claims.

McFadden concedes that he cannot show temporal proximity between his leave and his termination. Instead, he argues that causation is established "by way of intervening antagonism and inconsistencies" in the reasons FedEx proffered for his termination. (ECF No. 42-1, p. 13.) As evidence of intervening antagonism, McFadden points to nine "written reprimands" he received in the months following his return from medical leave, culminating in his termination. He argues that, taking into consideration his thirteen years of employment as a courier, a reasonable juror could find

that his multiple write-ups and one-day suspension were intervening antagonisms that could support an inference of retaliation.

McFadden had an extensive counseling and disciplinary history, much of which predates his medical leave. For instance, from 2014 through 2017, McFadden received a total of five warning letters for inappropriate conduct and three write-ups for poor job performance. In other words, McFadden's performance-related OLCCs and warning letter following his return from medical leave are consistent with his poor job performance prior to his medical leave and cannot—without more—be attributed to retaliatory animus. *See Ross v. Gilhuly*, 755 F.3d 185, 194 (3d Cir. 2014) ("An employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity.").

Additionally, FedEx's proffered reasons for terminating McFadden's employment were not inconsistent. At all times, Mullican made clear that McFadden's altercation with Shead and long disciplinary history informed his decision to fire McFadden. Under these circumstances, nothing suggests that McFadden's termination was causally related to his invocation of FMLA leave or his disability. Thus, the Court will dismiss McFadden's retaliation claims.

## IV. CONCLUSION

FedEx fired McFadden because he lost his temper and got into an altercation with FedEx's customer. FedEx did not violate the law when it did so. McFadden therefore cannot prevail on his claims. An appropriate Order follows.

**Date:** March 25, 2020           **BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

12